Filed 7/16/24  In re J.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.R.,<br><br>Defendant and Appellant. | F087566<br><br>(Super. Ct. No. JD142247-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Carissa A. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and DeSantos, J.

V.R. (mother) appeals from an order terminating her parental rights to her now three-year-old son, J.M. (son), under Welfare and Institutions Code section 366.26.[1] Mother's sole claim on appeal is that the juvenile court erred by finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA))[2] did not apply to the proceedings because the Kern County Department of Human Services (department) failed to make adequate initial and further inquiry into whether son was potentially an Indian child within the meaning of ICWA. The department concedes error, and that remand is appropriate for the limited purpose of ensuring ICWA inquiry compliance.

We accept the department's concession and remand the matter to ensure ICWA inquiry compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

On July 2, 2021, the department received a referral that mother and son's father, I.M. (father), engaged in domestic violence when son was nearly four months old. The family had an open dependency case concerning mother and father's daughter, A.M. (daughter), who was detained in 2019. Mother regained custody of daughter in December 2020, and mother was granted court-ordered family maintenance services.[4]

After investigating the referral, the children were taken into protective custody pursuant to a protective custody warrant. While locating the children to take them into

---

[1]   Undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]   "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]   Since the sole issue on appeal concerns ICWA, we primarily restrict our facts to those bearing on that issue.

[4]   Daughter is not the subject of this appeal, and therefore she will only be mentioned as necessary. Ultimately, another planned permanent living arrangement was ordered for daughter.

protective custody, the department had contact with various family members, including paternal great-grandparents, paternal grandmother, D.H., and maternal aunt, R.M. Maternal grandmother and mother's siblings were in the hospital recovering from a car accident.

The department filed a petition alleging son came within the provisions of section 300, subdivision (b)(1) based on the parents' history of ongoing domestic violence, including four incidents in May and June 2021. On the department's ICWA-010(A) form attached to the petition, the social worker stated she had not yet been able to complete the inquiry about son's Indian ancestry status but did not explain why.

For the detention hearing, which took place on July 23 and July 26, 2021, father filed an ICWA-020 form stating he had no Indian ancestry. Mother, however, did not file an ICWA-020 form. The juvenile court found father to be son's presumed father. At the July 26 hearing, the court asked mother and father whether anyone in their families ever told them they might have Indian or Alaskan Eskimo heritage, and both replied, "No." The court found ICWA did not apply because there was no reason to believe son was an Indian child. The court ordered son detained from mother and father.

Prior to the jurisdiction hearing, the department filed an amended petition, which added an allegation under section 300, subdivision (b)(1) that mother had an extensive criminal history of alcohol abuse dating back to 2014, which was unresolved, and mother tested positive for ethyl glucuronide, which indicated she recently consumed alcohol.

The department's report for the jurisdiction and disposition hearing stated that the juvenile court found ICWA did not apply on July 26, 2021. In an interview with the social worker, mother stated that maternal grandfather, with whom mother had a close relationship, moved to Mexico when she was two months old and continued to reside there. Mother mentioned the car accident that maternal grandmother and mother's siblings were involved in and stated they were getting better.

3.

At the November 2021 jurisdiction hearing, the juvenile court found the first amended petition's allegations true after the parents submitted on the department's report.

In the department's report for the disposition hearing, the social worker stated that mother and father, who were born in California, were of Hispanic descent with no known American Indian or Eskimo heritage, and the maternal and paternal grandmothers lived locally. Maternal grandfather lived in Mexico, while father did not have contact with son's paternal grandfather. In searching for relatives for placement, the social worker identified 35 maternal relatives and 14 paternal relatives, including children and deceased relatives, and mailed information to relatives about requesting placement. The social worker emailed an orientation link to maternal grandmother and spoke with paternal grandmother, maternal great-cousin Y.J., maternal great-aunt R.M., and maternal second cousin Natalie, with whom son was placed in September 2021.

The disposition hearing was held in March 2022. After hearing some testimony from mother, the juvenile court followed the department's recommendation to deny mother and father family reunification services as to son under section 361.5, subdivision (b)(10). A section 366.26 hearing was set for July 8, 2022.

In the department's report for the section 366.26 hearing, the department stated that son's caregivers wanted to adopt him. When addressing son's contact with other family members, the department also reported that paternal great-grandparents, with whom daughter was placed, provided childcare for son, paternal grandparents visited the children at paternal great-grandparents' home, and maternal grandmother had been supervising mother's visits with son.

The section 366.26 hearing was continued to August 19, 2022. Four days before the hearing, mother filed a section 388 petition asking for family maintenance services or six months of additional family reunification services. Mother asserted as changed circumstances that she completed multiple programs, and it was in son's best interest to

4.

provide her with services. The juvenile court set the section 388 petition to be heard on the same day as the section 366.26 hearing.

The juvenile court continued both hearings to October 13, 2022. Maternal grandmother, paternal great-grandfather, and paternal grandmother testified at the October 13 hearing. The hearing was continued to November 14, 2022, and mother and maternal grandmother testified at that hearing. At the hearing's conclusion, the court granted the section 388 petition and ordered son returned to mother's custody with family maintenance services.

Less than five months later, on April 3, 2023, the department filed a section 387 supplemental petition alleging the previous disposition was ineffective because mother continued to engage in domestic violence with father and consume alcohol. Son was taken into protective custody pursuant to a protective custody warrant.

The department spoke with relatives about the allegations, including maternal second cousin Natalie, maternal grandmother, paternal great-grandparents, and paternal grandmother. During the April 5, 2023 detention hearing on the section 387 petition, which mother but not father attended, the juvenile court ordered son detained from the parents and set a jurisdiction and disposition hearing for May 12, 2023. The court asked mother if she had learned "anything new" about any Indian heritage in her family, and mother replied she had not. The court stated there was no reason to change its earlier finding that there was no reason to know or believe the children were Indian children.

On April 6, 2023, father emailed the social worker and asked if there was a form he needed to fill out if his children " 'have Indian in them,' " and reported that he had " '59[ percent] Indian in me.' " The social worker provided him with an ICWA-020 form. The department's report for the jurisdiction hearing detailed the subsequent efforts the department made to identify potential Indian ancestry. On April 7, 2023, a social worker began calling relatives asking about Indian ancestry. Paternal grandmother D.H. reported possible Indian ancestry through paternal great-grandfather O.H., which he

5.

learned of through a DNA test. D.H. had not heard family members speak of possible Indian ancestry prior to the DNA results, but she believed her mother might have ancestry as she has " 'Cherokee features in her face.' "

Paternal great-grandfather O.H. told the social worker he had Native American ancestry in the Yaqui tribe, but he did not know who the ancestry was through. He took a DNA test which stated he was 59 percent Native American. Prior to the DNA test, he had not heard about Native American ancestry in the family but said his sister, Do.H., would know more about that. Paternal great-grandaunt Do.H. said a DNA test revealed Native American ancestry, which possibly was Yaqui through her mother, Je.H., and Je.H.'s father, Antonio. Je.H. was alive, but had dementia, and Antonio was deceased. Do.H. believed the ancestry is Mexican native, but she could not be sure, and to her knowledge, no one was an enrolled member of a tribe. Paternal great-aunt R.G., who was paternal grandfather Frank's sister, and paternal great-grandmother J.H. said there was no Indian ancestry in the family.

For the maternal family, maternal second cousin Natalie stated that her father and maternal grandmother had the same parents and there was no Indian ancestry in the family. Maternal grandmother stated there was no Indian ancestry in her family and to her knowledge, maternal grandfather did not have any such ancestry. The social worker mailed maternal grandfather an ICWA inquiry. Phone messages were left for maternal aunt, M.I., and maternal great-aunt, R.M. The social worker mailed ICWA inquiry letters to 45 maternal and paternal family members, but the record does not indicate if the department received any responses.

At the end of April 2023, paternal great-aunt Stephanie filed a relative information form stating she wanted to help care for son, which listed presumably paternal uncle Robert as another relative who might be able to help with son, along with his contact information. Another relative information form listed paternal aunt S.O. and her phone number as someone who might be able to help.

The combined jurisdiction and disposition hearing was held in July 2023. The parents, maternal grandmother, and paternal great-grandparents were present at the hearing. The juvenile court found the allegations of the section 387 petition true, denied the parents reunification services, and set a section 366.26 hearing for October 30, 2023, which was later continued to January 2, 2024. The court also granted section 388 petitions filed by paternal great-grandfather, paternal great-grandmother, and paternal grandmother requesting visitation with son. Despite the department's recitation in the report of its efforts to inquire into father's claim of Indian ancestry, the court did not address ICWA or revisit its finding that ICWA did not apply.

The department's report for the section 366.26 hearing confirmed son and daughter were residing with maternal second cousin Natalie. Natalie wanted to adopt son, but she was not ready to adopt daughter as daughter had behavioral problems that required more intensive services. Mother attended 27 of a possible 52 visits with the children, and the department assessed their relationship with mother as minimal.

Regarding ICWA, the department reported that the juvenile court found on July 26, 2021, that it had no reason to believe son was or may be a member of or eligible for membership in a federally recognized tribe, and there was no reason to know he was an Indian child. The department recognized the finding was made without prejudice, as the department has a continuing duty of inquiry. Nevertheless, it asserted ICWA did not apply. The department did not address its prior inquiries into father's claim of Indian ancestry or provide evidence of further inquiries. The department continued to report that father did not have any known Indian heritage.

Mother was present at the section 366.26 hearing. Her attorney objected to the department's recommendation to terminate parental rights over son. Mother made a statement to the juvenile court that she disagreed with the termination of her parental rights. The court found by clear and convincing evidence that son was likely to be adopted and terminated parental rights.

7.

## DISCUSSION

Under California's statutory scheme to comply with ICWA, the juvenile court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."[5] (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court, rule 5.481(a).)[6] The department's initial duty of inquiry begins at the referral stage, when the department must ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is taken into temporary custody, the duty of initial inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, [and] others who have an interest in the child … whether the child is, or may be, an Indian child …." (§ 224.2, subd. (b).)[7] "Under both ICWA and California law, ' "extended family member[s]" ' include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' " (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053; 25 U.S.C. § 1903(2); § 224.1, subd. (c).)

---

[5]     An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903 (4), (8); see § 224.1, subd. (a) [adopting federal definitions].)

[6]     All further references to rules are to the California Rules of Court.

[7]     There is a split of authority among the appellate courts as to whether the initial duty to inquire includes extended family members in all cases, or only when the child is removed from parental custody without a protective custody warrant. This issue is currently under consideration by our Supreme Court in *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572. In *In re Jerry R.* (2023) 95 Cal.App.5th 388, we concluded the broad duty to inquire of extended family members and others under section 224.2, subdivision (b) is triggered regardless of whether a child is taken into temporary custody by a social worker without a warrant or is taken into protective custody via a warrant. (*Jerry R.*, at pp. 411–426.) We will follow our decision in *Jerry R.* until the Supreme Court provides additional guidance in *Ja.O.*

At each party's first appearance in court, the juvenile court must ask each participant "whether the participant knows or has reason to know that the child is an Indian child," and "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c); see 25 C.F.R. § 23.107(a) (2024).) The court must also order each parent to complete a Judicial Council form ICWA-020, Parental Notice of Indian Status. (Rule 5.481(a)(2)(C) & (a)(3).)

If the initial inquiry gives the juvenile court or the department "reason to believe"[8] (but not sufficient evidence to determine there is "reason to know")[9] that an Indian child is involved in a proceeding, "further inquiry regarding the possible Indian status of the child" is required. (§ 224.2, subd. (e).) Section 224.2, subdivision (e)(2) enumerates three duties of further inquiry: (1) interviewing the parents, Indian custodian, and extended family members to gather biographical information regarding the child;

---

[8] "There is reason to believe a child involved in a proceeding is an Indian child whenever the [juvenile] court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated" in section 224.2, subdivision (d)(1)–(6). (§ 224.2, subd. (e)(1).)

[9] The enumerated grounds for "reason to know" are: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; and/or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c) (2024).)

9.

(2) contacting the Bureau of Indian Affairs (BIA) and the State Department of Social Services for assistance in identifying tribes with whom the child may be affiliated; and (3) contacting tribes, or any other person who may reasonably be expected to have information regarding the child's membership or eligibility for membership in a tribe. (§ 224.2, subd. (e)(2)(A)–(C).)[10]

If, after further inquiry is conducted, "the [juvenile] court, a social worker, or probation officer knows or has reason to know … that an Indian child is involved" in the dependency proceeding, formal notice shall be sent to the child's parents or legal guardian, Indian custodian, if any, and the child's tribe for any hearing that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement so the tribe may exercise its right to intervene. (§ 224.3, subd. (a); see 25 U.S.C. § 1912(a).)

The department "is required to document its ICWA inquiry efforts throughout the proceedings, beginning with the petition, which must be filed with a completed Judicial Council form ICWA-010(A), Indian Child Inquiry Attachment ([rule] 5.481(a)(1))." (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 566.) All filings thereafter must include "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status .…" (Rule 5.481(a)(5).)

If the juvenile court finds the department conducted "proper and adequate further inquiry and due diligence … and there is no reason to know whether the child is an Indian child," then the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2); rule 5.481(b)(3)(A).) The court must "ensur[e] that the [d]epartment has made an

---

[10] "Contact with a tribe" for the purpose of the department's duty of further inquiry "shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under [ICWA]" and "include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).)

adequate inquiry under ICWA and California law, and if necessary, the court must continue the proceedings and order the [d]epartment to fulfill its responsibilities." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.) "A juvenile court's finding that ICWA does not apply implies 'that social workers had fulfilled their duty of inquiry.' " (*In re Dominick D.*, *supra*, 82 Cal.App.5th at p. 567.)

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child under a substantial evidence standard, and the court's findings that the department has conducted a proper and adequate inquiry and used due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601 (*K.H.*); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.)[11] In assessing prejudice stemming from an inquiry error, "the focus is on the missed opportunity to uncover relevant information necessary to make a reliable, informed determination concerning whether the child is or may be an Indian child." (*K.H.*, at p. 609.)

Mother contends the juvenile court erred in finding that ICWA does not apply to this case because: (1) the department did not make an initial inquiry of extended relatives before father notified the social worker of possible Indian ancestry; (2) although the department spoke with paternal and maternal relatives after father's notification, in compliance with its duty of further inquiry, the department failed to attempt to obtain information regarding paternal great-grandaunt Do.H.'s claim of Indian ancestry in the Yaqui tribe through her mother and father, and did not contact the Yaqui tribe or BIA; and (3) the court did not ensure the department made an adequate inquiry and provided proper notice to the tribes.

---

[11] There is a split of authority among the courts of appeal regarding how to evaluate claims of ICWA inquiry error. (See *K.H.*, *supra*, 84 Cal.App.5th at pp. 611–618 [summarizing the varied approaches].) Our Supreme Court has granted review on the issue in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578. We will apply the standards this court articulated in *K.H.* until the Supreme Court provides additional guidance in *Dezi C.*

The department has responded with a letter brief, which states in relevant part: "Respondent concedes that the juvenile court may have erred in making a finding under [ICWA], based upon an inadequate inquiry by the [department]," and "[r]espondent respectfully requests that the matter be remanded, on conditional reversal, to the juvenile court to ensure compliance with the inquiry provisions of [ICWA]." As we explain, we accept the concession.

### Initial Duty of Inquiry

Mother first asserts the juvenile court's finding that there is no reason to know son is an Indian child is not supported by substantial evidence because the department did not discharge its initial duty of inquiry before father informed the social worker of potential Indian ancestry.

The record shows the department and the juvenile court failed to discharge several duties related to the initial duty of inquiry: (1) the social worker stated on the ICWA-010(A) form filed with the dependency petition that she was unable to complete the inquiry about son's Indian status but did not explain why; although the court asked the parents at the detention hearing whether anyone told them they might have Indian heritage, the court did not require mother to complete an ICWA-020 form and did not ensure the department complied with its duty of asking extended family members about Indian heritage before finding there was no reason to believe son was an Indian child; and (3) thereafter, prior to father's claim of Indian heritage, the department did not document that it inquired of extended family members about son's Indian status despite extended family members being available for interview throughout the case.

Clearly, the department failed to comply with its initial duty of inquiry and the juvenile court erred in failing to ensure such compliance and in finding there was no reason to know son is an Indian child and ICWA did not apply at the July 26, 2021 detention hearing. This was error. The department, however, did subsequently inquire of maternal and paternal extended family members once father informed the

12.

department that he might have Indian heritage, which can serve to fill its duty of initial inquiry. (*In re S.H.* (2022) 82 Cal.App.5th 166, 176–177 [since the department has a continuing duty of inquiry, the department may satisfy its duty of inquiry even after the court finds that ICWA does not apply].) Mother does not contend that the subsequent inquiry was inadequate to fulfill the department's initial duty of inquiry.

***Duty of Further Inquiry***

Mother next contends the department failed to fulfill its duty of further inquiry once father informed the social worker that he may have Indian ancestry. The duty of further inquiry arises when there is a reason to believe a child involved in a proceeding is an Indian child, which is shown when there is information suggesting that either the parent or the child is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1).)

The question is whether the disclosure by paternal great-grandfather and paternal great-grandaunt that there may be Yaqui ancestry on the paternal grandmother's side of the family gave the department and juvenile court "reason to believe" son is an Indian child.[12] The " 'reason to believe' standard requiring further inquiry should be broadly interpreted." (*In re S.R.* (2021) 64 Cal.App.5th 303, 317.) A report of possible Indian ancestry is sufficient to trigger the duty of further inquiry, as general ancestral information is " 'essential' " to the court's and department's " ' "affirmative and continuing duty to inquire" ' " to " 'broadly' " construe the duty of further inquiry. (*In re*

---

[12] Paternal great-grandfather's DNA test result by itself is arguably of little usefulness in determining whether son is an Indian child. As explained in *In re J.S.* (2021) 62 Cal.App.5th 678, since the term "Native American" as used by ancestry.com includes ethnic origins from North and South America, unless the identity of a tribe or a specific geographic area of possible ancestry origin is provided, the BIA cannot assist the department in identifying the tribal agent for any relevant federally recognized tribes. (*Id*. at pp. 689–690.)

*E.C.* (2022) 85 Cal.App.5th 123, 147–148, citing *In re T.G.* (2020) 58 Cal.App.5th 275, 295.)

Here, paternal great-grandaunt Do.H. and paternal great-grandfather O.H. identified the Yaqui tribe as a potential source of Indian heritage. Their claim of Indian ancestry with the Yaqui tribe was sufficient to establish a reason to believe son may be an Indian child, thus triggering the duty to conduct further inquiry.[13] (§ 224.2, subd. (e); *In re K.T.* (2022) 76 Cal.App.5th 732, 743–744 [the mother's statements of Blackfeet and Cherokee heritage and the father's assertions of Blackfeet, Cherokee, and/or Choctaw heritage was sufficient to require further inquiry]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404 [the paternal grandmother's claim she had Cherokee ancestry triggered further inquiry]; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 292 [the mother's ICWA-020 form indicating Cherokee ancestry on her maternal side and possible Indian ancestry of an unknown tribe through her paternal grandfather required further inquiry].)

Other than attempting to ask all maternal and paternal relatives whether there was any Indian heritage in the family, the record does not show the department conducted further inquiry about son's potential connection to the Yaqui tribe, such as by contacting the tribe or BIA, or attempted to obtain information about paternal family members that would assist the tribe or BIA in identifying whether father or son are eligible for tribal membership. The department does not discharge its duty of further inquiry until it makes "a 'meaningful effort' to locate and interview extended family members and to contact BIA and the tribes." (*In re K.T.*, *supra*, 76 Cal.App.5th at p. 744.)

---

[13] We note that paternal great-grandaunt Do.H. believed the ancestry was Mexican native, although she could not be sure. There is one federally recognized Yaqui tribe in the United States—the Pascua Yaqui Tribe of Arizona. (See Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs (89 Fed.Reg. 944 (Jan. 8, 2024).) There would not be a reason to believe that son is an Indian child if the paternal family's heritage is from a Yaqui tribe located in Mexico.

Because the department did not adequately investigate the paternal relatives' claims, the juvenile court erred in failing to revisit its July 26, 2021 finding that ICWA did not apply, which itself was erroneous due to the inadequate initial inquiry. Specifically, although the department recited in its report for the jurisdiction and disposition hearing on the section 387 petition that the paternal relatives had claimed Yaqui ancestry, the court did not ask the department for updated information about the results of its inquiry or whether the department contacted the tribe or BIA. The court therefore abused its discretion by failing to comply with its affirmative and continuing duty to inquire whether son may be an Indian child. (§ 224.2, subd. (a).)

Since the juvenile court abused its discretion and further inquiry may "uncover relevant information" on whether son is an Indian child (*K.H.*, *supra*, 84 Cal.App.5th at p. 609), we accept the department's concession that its inquiry may have been inadequate, and remand is appropriate so the court may ensure compliance with ICWA's inquiry provisions. On remand, the court must exercise its discretion to determine whether the department's further inquiry is adequate and the department used due diligence in a manner consistent with this opinion.

## DISPOSITION

The juvenile court's July 26, 2021 finding that ICWA does not apply is conditionally reversed, and the matter is remanded with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding. In all other respects, the court's order terminating parental rights is affirmed.